## SOUTHERN RAILWAY COMPANY *v.* WALLIS.

1. A railroad company is bound to stop its passenger-trains in response to proper signals at a flag-station at which it is in the habit of stopping trains of that character.
(a) There was no error in overruling the special demurrers.
2. The General Assembly by enactments codified in the Penal Code, §420, wherein the running of freight and excursion trains on Sunday is made a misdemeanor and wherein regular trains for the carrying of the mails or passengers are expressly excepted from its provisions, is an expression of public policy as to the legality of running the excepted trains on Sunday, and a legislative construction that the running of regular mail and passenger trains comes within the exception of Penal Code, §422, which makes it a misdemeanor for any person to pursue his ordinary calling on the Sabbath day, works of necessity and charity excepted.
3. In a suit for damages alleged to have been occasioned by the negligence of a defendant railroad company, a charge "that the plaintiff must further show that his injury, if any, was not caused by his own negligence and that he could not have avoided the injury by the exercise of ordinary care and diligence," is not open to the criticism that it confused and blended §§2322 and 3830 of the Civil Code to the prejudice of the defendant.
4. The verdict was not excessive.

Argued July 12,—Decided November 20, 1909.

Action for damages.    Before Judge Reagan.    Fayette superior court.    January 13, 1909.

*Charlton E. Battle, Howell Hollis,* and *Blalock & Culpepper,* for plaintiff in error.    *J. W. Wise,* contra.

EVANS, P. J.    G. W. Wallis sued the Southern Railway Company for failing to stop its train at a station and to receive him as a passenger, alleging that he was a physician, and had patients at Kenwood and Helmar, regular stations on the line of defendant's road, where the defendant's passenger cars stopped to take on and let off passengers.    The remaining paragraphs of the petition were as follows:    (4)    "That on Feb. 2, 1908, your petitioner was not well, and went on said train to said above-named place for the purpose of seeing his patients, and to keep from driving through the country in the cold and bad weather, on account of his physical condition.    (5)    That in the afternoon on said day, your petitioner went to Helmar, Georgia, a station on said railroad company's line, and where they take on passengers, and is a regular flag-station for the purpose of taking on passengers, for the purpose of boarding said train, and when said train came, he, in accordance with the rules of the company and the custom, flagged said train and tried to wave the same down to a stop for the purpose of getting on said train.    (6)    Your petitioner shows that the engineer on said train saw him, and saw him give the signal to stop, but said engineer refused to stop or notice your petitioner, but went on by said station and left your petitioner standing there on the ground without any means of conveyance for the purpose of getting home, which acts of said engineer petitioner charges as negligence.    (7)    Your petitioner says that he had no means of conveyance for reaching home, and could not get any.    That it was just at night, cold and bad weather, dark and muddy roads, and your petitioner had to walk home, a distance of seven miles through mud, water and ice; and on account of said walk and said exposure he was made sick and confined to his bed for some time, causing him severe pain and suffering, and that he has not fully recovered from same up to this time."

The defendant demurred generally and specially to the petition. The court overruled the demurrers, and the case was tried with the result that the plaintiff was allowed $250 as damages.    The defendant moved for a new trial, which was refused, and it excepts.

1.    The relevancy and pertinency of the allegations in the fourth

paragraph were challenged by special demurrer. The averments of this paragraph are but matters of inducement, introductory to the narrative of the plaintiff's cause of action. The defendant demurred specially to the fifth paragraph, because of a failure to specify in what way the train was flagged, or what custom or rule of the company was violated. The allegation of this paragraph is tantamount to saying that it was the habit of the defendant to stop its passenger train at this particular station whenever signaled, but that it failed to do so on this occasion when flagged. No agent in the service of the company could fail to know what was meant by this allegation. The defendant also by special demurrer moved to strike that portion of the 6th paragraph which alleged that the plaintiff was without means of conveyance for the purpose of getting home, and all of paragraph 7. These averments describe the circumstances under which the plaintiff found himself after the defendant's train failed to stop, and were proper to be considered by the jury in estimating his damages, if under the allegations of the petition the plaintiff was entitled to recover. The rule is well established that a railroad company is bound to stop its trains in response to proper signals at a flag-station at which it is in the habit of stopping trains of the kind so signaled. San Ant. & A. P. Ry. Co. v. Safford (Texas Civ. App.), 48 S. W. 1105; Wilson v. New Orleans & N. E. R. R. Co., 63 Miss. 352; Thomas v. Southern Ry. Co., 122 N. C. 1005 (30 S. E. 343); Morse v. Duncan, 14 Fed. 396. Such is the case made by the petition, and the general demurrer was properly overruled.

2. The defendant pleaded "that the 2nd day of February, 1908 [the day the plaintiff avers the train failed to stop], was upon the Sabbath day and the defendant had the right to refuse to enter into a contract of carriage if it desired to do so, and that it was guilty of no breach of duty as a carrier by not stopping at said station." The defendant contends that it is under no duty to enter into any contract of carriage on Sunday, nor is it under duty to stop its passenger trains at a particular station when run on Sunday for the purpose of receiving passengers. This contention is not sound. At common law contracts made on Sunday were valid and enforceable. *Hayden v. Mitchell*, 103 *Ga.* 431 (3), 440; Bishop on Contracts (2d ed.), §536. Nor was it crime at common law to pursue one's ordinary calling on the Sabbath day. Bishop, supra, §538; 2 Bish-

op's New Crim. Law, §§ 950 et seq. By statute the doing of certain acts on the Sabbath day has been made penal. And a contract made on the Sabbath day in furtherance of a violation of a criminal statute is obnoxious to public policy, and will not be enforced. But unless the contract is in furtherance of a violation of a criminal statute, or is prohibited, it is valid and enforceable. *Sanders* v. *Johnson,* 29 *Ga.* 526; *Dorough* v. *Equitable Mtg. Co.,* 118 *Ga.* 178; *Red Cypress Co.* v. *Perry,* 118 *Ga.* 879. There is no statute in this State prohibiting a carrier from running a passenger train on the Sabbath day, or prohibiting it from entering into contracts of carriage on that day. By the Penal Code, § 420, it is made penal to run freight or excursion trains on the Sabbath day, but "regular trains for the carrying of the mails or passengers" are expressly excepted therefrom. The prohibition of the Penal Code, § 422, against any person pursuing his business or ordinary calling on the Lord's day when not a work of necessity or charity, does not apply to the running of passenger trains; otherwise it would have been idle for the General Assembly to have made the running of an excursion passenger train on the Sabbath day an indictable offense. The two sections, 420 and 422, are in pari materia, and must be construed together. It would seem that the General Assembly having expressly or by necessary implication legalized the running of passenger trains on the Sabbath day, the doing of the work necessary thereto is to be regarded as a "work of necessity." But aside from this, a railroad company which runs a regular passenger train on the Sabbath will not be relieved of the performance of its legal duties incidental thereto.

3. One of the grounds of the motion complains that the court erred in charging "that the plaintiff must further show that his injury, if any, was not caused by his own negligence, and that he could not have avoided the injury by the exercise of ordinary care and diligence." The vice of this charge is said to consist in blending two separate and distinct rules of law applicable to the defense; the same being in part the provisions of the Civil Code, §§ 2322 and 3830. We see no error in this instruction of which the railroad company can complain.

4. It is also said that the verdict is excessive. Under the case made as contained in the record, we can not so say.

*Judgment affirmed. All the Justices concur.*