## 3390. WILLIAMSON v. THE STATE.

1. Section 1015 of the Penal Code of 1910, relating to the presumption against a party which arises on his failure to produce evidence within his reach to repel a charge against him, is not applicable on the trial of a criminal case.

2. The verdict is without any evidence to support it, and is therefore contrary to law.

DECIDED JUNE 7, 1911.

Indictment for misdemeanor; from Bartow superior court—Judge Fite. March 27, 1911.

*D. W. Blair, Neel & Neel,* for plaintiff in error.

*T. C. Milner, solicitor-general; George W. Stevens,* contra.

HILL, C. J. J. R. Williamson was convicted of violating section 416 of the Penal Code of 1910, which declares that "any person who shall pursue his business, or the work of his ordinary calling, on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." His motion for a new trial being overruled, he brings error.

The evidence in support of the accusation, briefly stated, is as follows: Williamson was foreman of a crew connected with the yard of the Louisville & Nashville Railroad Company at Junta, Ga. Between the hours of midnight and 3 o'clock a. m., Sunday, he was directing the switching and movements of certain railroad cars in the yard of the company at that place. The actual movement of the cars was carried on by three or four other employees of the company, who were acting under the directions of Williamson as foreman or conductor. These facts were not controverted by the accused, but it was insisted that they did not constitute a violation of the statute, for the work in question was incidental and necessary to the operation of the regular passenger trains passing through the yard at Junta, going north and south, and also to the running of freight trains during the hours mentioned, through the said yard, all of which trains were running within the statute, and not in violation of any penal law of the State, it being insisted that it was necessary for the operation of these passenger and freight trains that the tracks in the yard should be kept clear, and that it was absolutely necessary that other cars that had reached their destination at the Junta yard should be taken from the main line and placed where they would be out of the way of the other trains that were expected to pass through the yard later; and it was contended by the defendant that this work could only be performed by the yard crew under his control, and was absolutely necessary for the proper and safe running of the regular passenger trains, as well as such other trains as were entitled, under the statute, to run over the road on Saturday night and reach their destination in Atlanta not later than 8 o'clock Sunday morning.

In addition to the general grounds of the motion for a new trial, two special assignments of error are made: First, it is insisted that the court erred in instructing the jury as follows: "It is not in the power of the State to put up any of the crew. They were, as the State contends, all engaged in the work being carried on, and could not be forced to swear one against the other; but the defendant could, but fails to, put them up and explain the nature of the work going on, and one contention of the State is that this is a circumstance you can consider in determining whether or not that was a work of necessity." The indictment was against Williamson alone. If other persons were present and saw him violating the statute, they would have been competent witnesses to prove the fact, whether they were connected with the same work or not. Even if these persons had been jointly indicted with the accused, they would still have been competent witnesses for or against each other on separate trials. Section 995 of the Penal Code of 1910 provides that, "when two or more persons shall be jointly indicted and are separately tried, they shall be competent to testify for or against each other." If, however, they were engaged in the same criminal act, they would not have been compelled to state any fact of an incriminatory nature; but this exemption has repeatedly been held to be a personal privilege of the witness, which he could claim or not as he chose. In any event, we fail to see how the fact that these other persons may have been engaged in the same work could relieve them from testifying as to what the accused was doing at the time. They need not have been asked any question as to their own conduct; but, if they desired to take advantage of any exemption on the ground above indicated, their testimony could, and doubtless would, have been confined by the court to the acts of the accused. In addition to this, if the fact of their complicity in the alleged work entitled them to the privilege of silence, this privilege could have been claimed by them, whether they had been introduced by the accused or the prosecution. But how could the court know that, if these persons were introduced as witnesses, they would claim any privilege, or that they were engaged in the same violation of the law as that charged against the accused, until they had been introduced as witnesses and their testimony elicited? We fail to see how it was not in the power

of either party, the State or the accused, to put any member of the crew on the stand as a witness, if either desired the testimony.

Error is assigned upon the following charge: "The witness for the defendant was not present and knows nothing of his own knowledge about the work being done. That is weaker testimony in its nature, he not knowing as much about it as the men who were doing the work. In this connection I shall read you this section of the code and give it in charge: 'When a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain or satisfactory evidence in his power, relies upon that which is of a weaker nature, a presumption arises that the charge or claim is well founded; but the presumption may be rebutted.' Now, then, it is within the power of the defendant to place upon the stand the witnesses who were with him, as he claims, and who know more about it than the superintendent, who was not there. That is one fact you may consider, along with the other evidence in the case, in determining whether or not the work that was being done, if any was done, was a work of necessity at that particular time, or whether it could have been postponed until Monday morning and then done." This excerpt from the charge was objected to on the ground that there was nothing in the evidence to authorize it—nothing to indicate that any of the witnesses were under the power or control of the accused, or were prevented from giving testimony for him by any act on his part. It is also objected to as being wholly inappropriate and inapplicable in a criminal case.

This instruction in effect told the jury that they were authorized to infer, from a failure on the part of the accused to produce the employees who were engaged with him at the time, that the prosecution was well founded. In *Mills* v. *State,* 133 *Ga.* 155 (65 S. E. 368), it is held that in a criminal case the court should not give in charge the section of the Penal Code to the effect that the omission to produce evidence within a party's reach to repel a charge raises a presumption that the charge is well founded. Penal Code (1910), § 1015. In all criminal cases the burden is on the State to establish the defendant's guilt beyond a reasonable doubt. In the case just cited the learned Justice who delivered the opinion of the court says: "A diligent investigation fails to disclose any case

where it has been ruled that it was proper to give in charge to the jury in a criminal case [this section] of the Penal Code. We can hardly conceive of a criminal case where an instruction in the language of this code section would be authorized." And in *Knox* v. *State,* 112 *Ga.* 373 (37 S. E. 416), Mr. Justice Little states that this section of the code is entirely inapplicable to criminal cases. In effect it tells the jury that if the defendant had evidence by which he might repel or rebut the charge, and fails to introduce it, the presumption arises that he is guilty. This violates the fundamental principle of criminal law that the guilt of the accused must be shown by competent evidence before a legal conviction can be had. One accused of crime has a right to stand mute, and, unless it affirmatively appears by the evidence that he is guilty, he can not be legally so held. The presumption of law is that he is innocent, and this presumption remains until he is proved to be guilty. This principle, being inapplicable to criminal cases, has no proper place in the Penal Code. In the case of *Davis* v. *State,* 4 *Ga. App.* 442-444 (61 S. E. 843), referring to the same section of the code, this court says that where the evidence is clearly accessible to both parties, this presumption does not arise.

Here the brief of evidence shows that the other members of the crew were known to the prosecution and were entirely accessible, and no reason whatever appears why, if their testimony had been regarded as material, it could not have been obtained by the State as well as by the accused. Under these circumstances, as was said in the *Davis* case, the mere failure of the defendant to introduce the witnesses did not give rise to any presumption that this testimony would have been unfavorable to him. See also *Wilson* v. *State,* 8 *Ga. App.* 816 (3), (70 S. E. 193). In view of the repeated decisions of the Supreme Court on the inapplicability of this section in criminal cases, any other discussion of the question would be superfluous. We think the court erred in giving in charge to the jury the principle embodied in this section of the code, and that the error was prejudicial.

On the merits of the case, however, which seem to be not materially controverted, we do not think the conviction was authorized. The work done by the crew in charge of the accused was done between midnight and 3 o'clock on Sunday morning. The evidence shows that during these hours several trains had passed through

Junta, and none of them in violation of the statute. Unquestionably the railroad company had a right to run its passenger trains at all hours during Sunday, and had a right to run its through freight trains through the yard so they could reach their destination before 8 o'clock Sunday morning. An official of the road testified that this work that was done in the yard was absolutely necessary for the operation of the trains which the railroad company was authorized to operate; and he further testified that this defendant and those whom he had in charge constituted the crew of the yard engaged in this necessary work as an incident of the lawful operation of its passenger trains and those freight trains which it could lawfully operate through the yard. The evidence further shows that there were cars which had reached the yard and were on the main tracks, and that the tracks had to be cleared of these cars in order that the regular passenger trains might pass through. It therefore follows, since the legislature has expressly, or by necessary implication, made it lawful to operate passenger and mail trains on Sunday, and, under named conditions, freight trains up to 8 o'clock a. m., and this work in the yard at Junta was necessary to a safe and proper operation of such trains through its yard, that the accused and the crew under his charge were engaged in a work of necessity, and were therefore within the exception contained in section 416 of the Penal Code. *Southern Railway Co.* v. *Wallis,* 133 *Ga.* 553 (66 S. E. 370, 30 L. R. A. (N. S.) 401); *Kellam* v. *State,* 7 *Ga. App.* 575 (67 S. E. 683).

The evidence of the superintendent (which seems not to have been controverted) is that on this occasion there had been, through no fault whatever of the railroad company, a congestion of cars in the yards at Junta; that this congestion rarely occurred, and when it did occur, as in the present instance, it was absolutely necessary to clear the tracks of the cars and switch them from the main line, in order that the passenger trains and freight cars which were properly scheduled to arrive at their destination in the State before 8 o'clock on Sunday morning might pass through; otherwise there would have been great interruption and delay in the traffic of the railroad company. It seems clear, from the evidence, that the railroad company was not violating the law in doing this work, which was absolutely necessary for the proper and lawful operation

of its trains; and it appears from the evidence that it was endeavoring in every way possible to conform to the statute, and not to violate it.          *Judgment reversed.*